**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| JAMES UNDERWOOD and<br>  RICHARD PHILLIPS,<br><br>                    Plaintiffs,<br><br>vs.<br><br>THE BOARD OF COUNTY COMMISSIONERS<br>  of the COUNTY OF JEFFERSON, STATE OF<br>  OKLAHOMA, and JOHN DALE, in his<br>  individual capacity,<br><br>                    Defendants. | )<br>)<br>)<br>)<br>)<br>)  Case No. CIV-07-668-D<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER

Before the Court is the Motion for Summary Judgment of defendant John Dale [Doc. No. 39], seeking judgment on the claims asserted by James Underwood ("Underwood"). Also before the Court is the Motion for Summary Judgment [Doc. No. 35] filed by The Board of County Commissioners of the County of Jefferson County ("Board"); that motion seeks judgment on Underwood's claims. Both motions are addressed herein.[1]

I. Background:

Underwood and Richard Phillips ("Phillips") bring this action pursuant to 42 U. S. C. § 1983; each alleges that his employment was terminated in violation of his constitutional rights. Both were employed by John Dale ("Dale"), the District 3 County Commissioner of Jefferson County, to work on the road crew for District 3. Phillips and Underwood were hired by Dale in 2003; on November 16, 2006, Dale terminated both plaintiffs. According to Dale, he terminated them because, without prior approval, they asked a mechanic to perform certain repairs on a Jefferson County truck.

---

[1]*Defendants have also filed motions for summary judgment on the claims asserted by Richard Phillips, and those motions will be addressed in another order.*

Phillips denies that they did so and argues that the stated reason was pretextual. Phillips alleges that the termination violated his First Amendment right to freedom of speech because it was motivated by Phillips' criticism of Dale during Phillips' 2006 campaign for election to the position of District 3 County Commissioner. Underwood alleges that his termination violated his First Amendment right to freedom of association, arguing that he was terminated because he supported Phillips' election campaign.

Dale seeks judgment on Underwood's claims, arguing that the undisputed material facts establish that Underwood cannot, as a matter of law, prevail on his claim. The Board seeks summary judgment, arguing that, even if Underwood could prove his allegations, the Board cannot be liable as a matter of law because Underwood's termination did not result from a policy or established practice of the County.

The briefs and the evidence in the record before the Court establish that the parties do not dispute certain material facts. It is not disputed that Underwood was hired by Dale on September 1, 2003; he worked on the District 3 road maintenance crew as a machinery operator and laborer. It is not disputed that Dale hired Phillips in July 2001 as the District 3 road crew foreman. The parties also agree that Phillips, Underwood, and Dale had been friends since childhood, that Phillips and Underwood were very close friends, and that Phillips recommended Underwood for the road crew job in 2003. Dale was the elected County Commissioner for District 3, and had served in that position for several years; his term expired at the end of 2006, and the election was scheduled for July. In early 2006, Phillips began considering the possibility of seeking election to the post. In May of 2006, Phillips and Underwood met with Dale to inform him that Phillips had decided to seek election to the District 3 seat. According to Underwood, Dale was not pleased about Phillips'

2

plans. However, it is not disputed that Dale did not seek re-election. Phillips filed for the District 3 position, and both he and Underwood remained employed in their positions during the ensuing campaign. During Phillips' campaign, Underwood assisted him by occasionally handing out flyers and by going door-to-door seeking votes for Phillips; Underwood did not contribute financially to the campaign, was not involved in planning campaign strategy, made no public speeches or other appearances on Phillips' behalf, and did not prepare advertising on Phillips' behalf. Underwood Dep., Underwood Ex. 4, pp. 59-61; 109.

Although Phillips alleges that he accused Dale of wrongdoing during the election campaign, there is no evidence that he publicly did so or that he reported alleged misconduct to anyone. Even if Phillips had done so, however, there is no evidence in the record that Underwood was critical of Dale during the campaign. In his deposition, Underwood mentioned only one incident in which he openly criticized Dale; that occurred in 2005, prior to Phillips' decision to seek office. According to Underwood, he told Dale that he believed that Dale treated his employees poorly. Underwood dep., Dale Ex. 1, p. 46; p. 47, lines 1-6. Dale did not react angrily and, in fact, apologized to Underwood. *Id.* There is no evidence that this incident had any connection to Phillips' campaign or to Underwood's support of that campaign. It is not disputed that the election was held in July, 2006, and Phillips was defeated by Lloyd Kimbro. Dale remained in office until his term expired at the end of the 2006 calendar year. Both Underwood and Phillips remained employed until November 16, 2006.

Underwood offers no evidence of any adverse employment action by Dale at any time after the May 2006 meeting, when Phillips told Dale of his plans to run for office, until November 16, 2006. There is also no evidence of any adverse action by Dale against Underwood during the time

period in which Underwood performed volunteer work for Phillips' election campaign or the time period after Phillips lost the election. Underwood testified that Dale did not criticize him for assisting Phillips in the campaign, and did not take any action against him. Underwood dep., Dale Ex. 1, pp. 61- 62. In fact, it is undisputed that Underwood received salary increases in September 2006 and in October 2006.

Although the parties dispute the validity of Dale's stated reason for terminating Underwood and Phillips, they do not dispute the events leading up to their termination. On or about November 7, 2006, one of the County trucks was in need of repair to the kingpins and speedometer. At Dale's direction, then-foreman Larry Moss instructed Phillips to deliver the truck to Freightliner in Wichita Falls, Texas for repairs; he told Underwood to follow in another truck in order to drive Phillips back to Jefferson County. Underwood does not dispute that, while they were at Freightliner, Phillips asked the mechanic to also examine the truck's brakes and to notify Pat Langford at the Jefferson County office if the brakes needed repair. According to Dale, he received a phone call from Freightliner two days later; he was told that Phillips had asked Freightliner to perform additional repair work on the truck's brakes and radiator. Because Phillips and Underwood were not authorized to order repair work, Dale cancelled the request. He also testified in his deposition that, as an outgoing County Commissioner, he had a limited budget and that the cost of additional repairs would impact the relatively small amount of funds remaining. Dale dep., Dale Ex. 2, p. 20-22. Dale also decided to have any needed brake repair done "in-house;" Underwood testified that he knew how to do brake work on the trucks and that the County typically performed such work in-house. Underwood dep., Dale Ex. 1, p. 94, lines 2-7.

The parties agree that, on November 16, 2006, Dale met with Underwood and Phillips and

terminated them because of the incident involving truck repairs at Freightliner. Although Underwood denied that he had requested that Freightliner take any action at all, Dale told both men that they were terminated. Dale testified that he did so because they were not authorized to bind the County to expenditures for truck repairs and he believed they had gone "over his head" by authorizing such work. Dale dep., Dale Ex. 2, p. 20-22; p. 25, lines 1-5.

Although Underwood agrees that Dale told them they were being terminated for going over his head in authorizing the repairs, Underwood believes that he was terminated because of his personal support of Phillips' campaign. When asked the basis for his belief, he testified that he believes Dale did not like the fact that he and Phillips were close friends and did not spend time with Dale outside the workplace. Underwood dep., Dale Ex. 1, p. 148, lines 22-25; p. 149, lines 1-11.

## II. Summary Judgment Standards:

Summary judgment is proper where the undisputed material facts establish that a party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A material fact is one which may affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). To dispute a material fact, a plaintiff must offer more than a "mere scintilla" of evidence; the evidence must be such that "a reasonable jury could return a verdict" for him. *Id.* The facts and reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party. *MacKenzie v. City & County of Denver*, 414 F. 3d 1266, 1273 (10th Cir. 2005).

If the undisputed facts establish that a plaintiff cannot prove an essential element of a cause of action, the defendant is entitled to judgment on that cause of action. *Celotex*, 477 U.S. at 322. However, the defendant need not disprove the plaintiff's claim; the defendant must only point to "a

lack of evidence" on an essential element of that claim. *Adler v. Wal-Mart Stores, Inc.*, 144 F. 3d 664, 671 (10th Cir. 1998). The burden then shifts to the plaintiff to go beyond the pleadings and present facts, admissible in evidence, from which a rational trier of fact could find for him; conclusory arguments are insufficient, as the facts must be supported by affidavits, deposition transcripts, or specific exhibits incorporated therein. 144 F. 3d at 671-72. It is not the Court's responsibility to attempt to find evidence which could support the plaintiff's position. *Id.* at 672.

III.  Application to Dale's Motion:

The First Amendment protects public employees from discrimination based upon their political association. *Branti v. Finkel*, 445 U.S. 507 (1980); *Elrod v. Burns*, 427 U.S. 347 (1976) (plurality opinion). Public employees are protected from retaliatory employment actions based "upon their political beliefs, affiliation, or non-affiliation unless their work requires political allegiance." *Jantzen v. Hawkins,* 188 F. 3d 1247, 1251 (10th Cir. 1999) (citing *Mason v. Oklahoma Turnpike Auth.*, 115 F. 3d 1442, 1451 (10th Cir. 1997)). To satisfy his prima facie burden that his termination violated his right to freedom of association, Underwood must plead and prove 1) he suffered an adverse employment action; 2) his political affiliation and/or beliefs were "substantial" or "motivating" factors underlying the action; and 3) his employment position did not require political allegiance. *Id.*; *Brown v. Reardon*, 770 F.2d 896, 899 (10th Cir. 1985) (citing *Neklony v. Painter*, 653 F.2d 1164, 1168 (7th Cir. 1981)).

In his motion, Dale argues that he is entitled to judgment because the undisputed material facts establish that Underwood cannot satisfy his prima facie burden. He does not dispute that termination is an adverse employment action; thus, the initial element is satisfied. Dale argues, however, that Underwood has not presented evidence to establish the second requisite element of

his prima facie case because he offers no evidence that his political beliefs or affiliation were substantial or motivating factors in Dale's decision to terminate him.

To defeat summary judgment, Underwood must present evidence sufficient to create a genuine issue of fact regarding this issue. *Jantzen*, 188 F. 3d at 1251. To do so, Underwood must "produce evidence linking the employer's action" to his protected affiliation. *Maestas v. Segura*, 416 F. 3d 1182, 1188 n. 5 (10th Cir. 2005). "Speculation or hunches amidst rumor and innuendo will not suffice." *Id.*

In a freedom of association case, the plaintiff's burden of establishing the essential prima facie element of a substantial or motivating factor is the same as that applied to a freedom of speech case. *See Jantzen*, 188 F. 3d at 1251. Although the courts have not defined the phrase "substantial" or "motivating" factor for this purpose, the Tenth Circuit has explained the plaintiff's burden of showing a substantial motivating factor:

> What constitutes a substantial motivating factor evades precise definition. An employee "need not prove his speech was the sole reason for defendants' action." *Copp v. Unified Sch. Dist. No. 501*, 882 F.2d 1547, 1554 (10th Cir. 1989). Nor is the employee required to show "but-for" causation; that is, to demonstrate but-for the employee's speech the subsequent employment action would not have occurred. *See Spiegla v. Hull*, 371 F. 3d 928, 941-43 (7th Cir. 2004). Rather, the employee must show the protected speech *played a substantial part* in the employer's decision to adversely alter the employee's conditions of employment. (citations omitted).

*Maestas*, 416 F. 3d at 1188. "To withstand summary judgment...therefore, an employee must produce evidence linking the employer's action to the employee's speech." *Id.*

The Tenth Circuit has also explained the evidence that is required to create a factual dispute regarding a substantial or motivating factor. "Adverse action in close proximity to protected speech may warrant an inference of retaliatory motive." *Maestas*. 416 F. 3d at 1189 (citing *Baca v. Sklar*, 398 F. 3d 1210, 1221 (10th Cir. 2005)). However, even temporal proximity is "insufficient, without

more, to establish such speech as a substantial motivating factor in an adverse employment decision." *Id.* (citations omitted). An employer's knowledge of protected activity, "together with *close* temporal proximity" between the protected activity and the adverse employment action, "may be sufficiently probative of causation to withstand summary judgment." *Maestas*, 416 F. 3d at 1189. In contrast, "evidence such as a long delay between the employee's speech and challenged conduct" or evidence of "intervening events" tend to "undermine any inference of retaliatory motive and weaken the causal link." *Id.*

The Court concludes that the undisputed facts and the evidence in the record, when construed in favor of Underwood as the Court must, establish that Underwood has not presented sufficient evidence to support a prima facie case that Dale violated his associational rights under the First Amendment when he was terminated. Although the parties do not dispute that termination is an adverse employment action, Underwood must also show that the termination was substantially motivated by his political association or beliefs. The evidence is insufficient to create a material fact dispute from which a reasonable jury could conclude that substantial motivation exists.

The undisputed evidence shows that Underwood and Phillips told Dale of Phillips' intent to run for office sometime in the spring of 2006. Underwood remained employed in his same position thereafter and presents no evidence of any adverse employment consequences during the ensuing election campaign. Although he volunteered in that campaign by handing out flyers and going door-to-door, he offers no evidence that Dale criticized or confronted him about his activity. It is undisputed that Dale was not a candidate for re-election. Following the election, Dale remained in office until his term expired at the end of 2006; he continued to employ Underwood. Underwood offers no evidence to show that he suffered any form of adverse employment action during this

period. In fact, the undisputed evidence is to the contrary because he received two salary increases. It was not until November 16, 2006, approximately four months after the election and six months after Dale learned that Phillips was a candidate, that Underwood was terminated.

Assuming, for the sake of argument, that Underwood's conduct in Phillips' campaign is sufficient to constitute a political affiliation or expression of belief, the evidence does not support a causal connection between his conduct and his termination. The lack of temporal proximity between Underwood's involvement in Phillips' campaign and his termination undermines any inference of retaliatory motive, and the intervening salary increases further weaken the alleged causal connection. Furthermore, Underwood seeks to support his claim by offering his personal opinion or suspicion, and fails to support his beliefs with other evidence. The Court concludes that he has failed to submit evidence sufficient to establish his prima facie claim, and Dale is entitled to judgment as a matter of law.[2] Dale's Motion for Summary Judgment [Doc. No. 39] is GRANTED.

IV. Application to the Board's Motion:

Underwood also seeks to hold the Board liable for his alleged wrongful termination. Although a county or municipality cannot be liable under § 1983 under a theory of *respondeat superior*, it can be potentially liable for harm caused "through the execution of its own policy or custom by those whose edicts or acts may fairly be said to represent official policy." *Meade v. Grubbs*, 841 F.2d 1512, 1529 (10th Cir. 1988) (citing *Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978)). Underwood argues that, because Dale was a County Commissioner allegedly having the delegated authority to make employment decisions, he acted as a final policymaker; thus, he contends that the Board can be liable for Dale's violation of Underwood's rights.

---

[2] *Having concluded that Underwood cannot meet his prima facie burden that his political association was a substantial motivating factor in his termination, the Court need not address Dale's additional arguments.*

Inasmuch as the Court has concluded that Underwood cannot, as a matter of law, prevail on his claim that Dale violated his First Amendment rights, the Board is entitled to summary judgment on Underwood's claim under the liability theories asserted by Underwood. Accordingly, the Board's Motion [Doc. No. 35] is GRANTED.

V. Conclusion:

For the reasons set forth herein, Dale's Motion for Summary Judgment on the claims asserted by Underwood [Doc. No. 39] is GRANTED; the Board's Motion for Summary Judgment on Underwood's claims [Doc. No. 35] is also GRANTED.

IT IS SO ORDERED this __14th__ day of April, 2009.

_____
TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE