## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| JAMES UNDERWOOD and | ) | |
|   RICHARD PHILLIPS, | ) | |
| | ) | |
|       Plaintiffs, | ) | |
| | ) | |
|     vs. | ) | Case No. CIV-07-668-D |
| | ) | |
| THE BOARD OF COUNTY COMMISSIONERS | ) | |
|   of the COUNTY OF JEFFERSON, STATE OF | ) | |
|   OKLAHOMA, and JOHN DALE, in his | ) | |
|   individual capacity, | ) | |
| | ) | |
|       Defendants. | ) | |

### ORDER

Before the Court is the Motion for Summary Judgment of John Dale [Doc. No. 37], seeking judgment on the claims asserted by Richard Phillips ("Phillips").  Also before the Court is the motion of the Board of County Commissioners of Jefferson County (the "Board") [Doc. No. 36] for summary judgment on Phillips' claims against the Board.  Both motions are addressed herein.[1]

I.  BACKGROUND:

Phillips and James Underwood ("Underwood") brought this action pursuant to 42 U. S. C. § 1983, alleging that their employment was terminated in violation of their constitutional rights.  Phillips was the foreman of the road crew for District 3 of Jefferson County, and Underwood was a member of the crew.  On November 16, 2006, both were terminated by defendant John Dale ("Dale"), the District 3 County Commissioner of Jefferson County.   According to Dale, he terminated them because, without prior approval, they asked a mechanic to perform certain repairs on a Jefferson County truck.  Phillips denies that he did so and argues that the true  reason for his termination was retaliation for the exercise of his constitutional rights.  Phillips alleges that the

---

[1] By separate Order, the Court has addressed the summary judgment motions of Dale and the Board regarding the claims asserted by James Underwood.

termination violated his First Amendment right to freedom of speech.  Specifically, Phillips contends that he reported Dale's allegedly improper treatment of a Department of Corrections ("DOC") inmate assigned to work on the District 3 road crew; he also alleges that he told others that Dale misused County funds and resources.  Phillips further asserts that he repeated these allegations during his 2006 campaign to replace Dale as District 3 County Commissioner.  Phillips alleges that Dale demoted him and ultimately terminated his employment in retaliation for Phillips' statements.  Phillips also asserts a pendent state law tort claim that his termination violated Oklahoma public policy.

Dale seeks judgment on Phillips' claims, arguing that the undisputed material facts establish that Phillips cannot, as a matter of law, prevail on his First Amendment or state law claims.  The Board also seeks summary judgment, arguing that, even if Phillips could prove his allegations against Dale, the Board cannot be liable as a matter of law because Phillips' termination did not result from a policy or established practice of the County.

## II.  SUMMARY JUDGMENT STANDARD:

Summary judgment is proper where the undisputed material facts establish that a party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A material fact is one which may affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  To dispute a material fact, a plaintiff must offer more than a "mere scintilla" of evidence; the evidence must be such that "a reasonable jury could return a verdict" for him.  *Id.*  The facts and reasonable inferences therefrom must be viewed in the light most favorable to the non-moving party.  *MacKenzie v. City & County of Denver*, 414 F. 3d 1266, 1273 (10th Cir. 2005).

If the undisputed facts establish that a plaintiff cannot prove an essential element of a cause

2

of action, the defendant is entitled to judgment on that cause of action.  *Celotex*, 477 U.S. at 322.

However, the defendant need not disprove the plaintiff's claim; the defendant must only point to "a

lack of evidence" on an essential element of that claim.  *Adler v. Wal-Mart Stores, Inc.*, 144 F. 3d

664, 671 (10th Cir. 1998).  The burden then shifts to the plaintiff to go beyond the pleadings and

present  facts, admissible in evidence, from which a rational trier of fact could find for him;

conclusory arguments are insufficient, as the facts must be supported by affidavits, deposition

transcripts, or specific exhibits incorporated therein.  144 F. 3d at 671-72.  It is not the Court's

responsibility to attempt to find evidence which could support the plaintiff's position. *Id.* at 672.

III. APPLICATION:

The briefs and the evidence in the record before the Court establish that the parties do not

dispute certain material facts.  It is not disputed that Phillips was hired by Dale in July of 2001 for

the position of road crew foreman for District 3; on Phillips' recommendation, Dale hired

Underwood as a road crew laborer in September 2003. The parties also agree that Phillips and

Underwood were close friends and that both had known Dale  since childhood.  When the plaintiffs

were hired,  Dale was the elected County Commissioner for District 3, and he had served in that

position for several years.  His term expired at the end of 2006, and the District 3 commissioner

election was scheduled for July 25, 2006.  In early 2006, Phillips began considering the possibility

of seeking election to the post.   Accompanied by Underwood, Phillips met with Dale in the spring

of 2006, and told Dale that Phillips had decided to run for the post.[2]   Dale was not happy with

Phillips' decision; however,  it is not disputed that Dale did not seek re-election.   Phillips filed for

the District 3 position, and both he and Underwood remained employed in their positions during the

---

[2]*The date of this meeting is unclear from the record. Phillips and Underwood mentioned several different dates; however, the parties agree the meeting was prior to the filing deadline for the July election, which appears to have been sometime in April.*

ensuing campaign.  Phillips was defeated in the July 2006 election, and Lloyd Kimbro was elected District 3 County Commissioner.  However, Dale's term of office did not expire until the end of calendar year 2006;  Phillips and Underwood remained employed by Dale on the District 3 road crew until November 16, 2006, when both were terminated by Dale.

The record also reflects that it is undisputed that, in September 2006, Dale demoted Phillips from the position of road crew foreman.  According to Dale, he did so because he learned that Phillips had authorized a County truck to pull a truck from private property, where it had been stuck in the mud or sand.  Dale dep., Phillips' Ex. 3, p. 15.  Because it was unlawful to use County vehicles on private property, Dale asked Phillips about the incident, and Phillips admitted the allegation.  *Id.*, p. 17.  Dale testified that, as a result,  he demoted Phillips from the position of foreman to a position as a driver.

The parties agree that Phillips was terminated on November 16, 2006.  Although Phillips disputes the validity of Dale's stated reason for terminating him, the parties do not dispute the events leading up to the termination.  On or about November 7, 2006, one of the County trucks was in need of repair to the kingpins and speedometer.  At Dale's direction, then-foreman Larry Moss instructed Phillips to deliver the truck to Freightliner in Wichita Falls, Texas  for repairs; he told Underwood to follow in another truck in order to drive Phillips back to Jefferson County.   Underwood does not dispute that, while they were at Freightliner, Phillips asked the mechanic to also examine the truck's brakes and to notify Pat Langford at the Jefferson County office if the brakes needed repair.  According to Dale, he received a phone call from Freightliner two days later;  he was told that Phillips had asked Freightliner to perform additional repair work on the truck's brakes and radiator.  Because Phillips and Underwood were not authorized to order repair work, Dale cancelled the request.  He also testified in his deposition that, as an outgoing County Commissioner, he had a

4

limited budget and that the cost of additional repairs would impact the relatively small amount of funds remaining.  Dale dep., Dale Ex. 2, p. 20-22.    Dale also decided to have any needed brake repair done "in-house"; the County typically performed such work in-house.

Phillips contends that Dale's true reason for terminating him was retaliation for Phillips' critical comments about Dale prior to or during the 2006 election.  According to Phillips allegations, he told others that he believed Dale was improperly reimbursed with County funds for gasoline or mileage for a personal trip to get his hair cut.  He also alleges that he told others that Dale had allowed a County vehicle to perform work on private property, an action that was unlawful because County vehicles and employees are prohibited by law from performing work on private property.  Phillips further alleges that he was involved in an investigation in which a Department of Corrections ("DOC") inmate accused Dale of abusing him while the inmate was assigned to work as a  District 3 road crew employee.[3]    Phillips argues that these statements constitute speech protected by the First Amendment, that they were made during his election campaign in his capacity as a private citizen, and that Dale terminated him as a result of these statements.

A.  Elements of a public employee's First Amendment claim based on freedom of speech:

The First Amendment protects public employees from adverse employment actions in retaliation for their exercise of free speech.  *Pickering v. Bd. of Educ.*, 391 U.S. 563 (1968). To determine if  a public employer impermissibly retaliated against a public employee in violation of his First Amendment rights, the  court applies the  test derived from  *Pickering* and *Connick v. Myers*, 461 U.S. 138 (1983). Accordingly, to establish a prima facie case of First Amendment retaliation, the employee must show that his speech can be fairly characterized as relating to a matter

---

[3]*As discussed in more detail, infra, although Phillips' brief in opposition to summary judgment argues that Phillips reported this and allegations of criminal conduct to the DOC, the evidence does not support the allegation that Phillips made a report or that any reported misconduct rose to the level described by Phillips' counsel in the brief.*

of public concern and that his interests as a citizen outweigh the government employer's interest in promoting the efficiency of the public services it performs through its employees. *Pickering*, 391 U.S. at 568; *Dill v. City of Edmond*, 155 F. 3d 1193, 1201 (10th Cir. 1998).

The *Pickering* test has been modified by the Supreme Court. *Garcetti v. Ceballos*, 547 U.S. 410 (2006). In *Garcetti*, the Court determined that the context in which the employee's speech was made is an additional factor to be considered; the Court held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 420.   As the Court explained:

> [r]estricting speech that owes its existence to a public employee's professional responsibilities does not infringe any liberties the employee might have enjoyed as a private citizen. It simply reflects the exercise of employer control over what the employer itself has commissioned or created.

*Id.* at 421-22. Applying this limitation to a public employee's freedom of speech claim, the Tenth Circuit has adopted the following test: 1) the Court must first determine whether the employee spoke pursuant to his official duties;[4] 2) if not, then the Court must determine if his speech touches upon a matter of public concern; and 3) if so, the Court must balance the employee's interest in speaking about such matters against the interest of the public employer in promoting the efficiency of the public services performed through its employees. *Brammer-Hoelter v. Twin Peaks Charter Academy*, 492 F. 3d 1192, 1202-03 (10th Cir. 2007). Whether a public employee's statement was made pursuant to his official duties is a question of law. *Hesse v. Town of Jackson*, 541 F. 3d 1240, 1249 (10th Cir. 2008).

---

[4]*If the speech was made pursuant to the employee's official duties, the inquiry ends because the employee is not afforded First Amendment protection for such statements. Garcetti, 547 U.S. at 420.*

"To determine the threshold issue of whether an employee's speech addressed a matter of public concern, we look at the content, form, and context of a given statement as revealed by the contents of the record." *Burley v. Wyoming Dept. Of Family Services*, 66 F. App'x 763, 765 (10th Cir. 20030)(unpublished) (citing *Connick v. Myers*, 461 U.S. 138, 142 (1983)).  The Tenth Circuit has explained the topics that constitute  matters of public concern:

> [m]atters of public concern are those of interest to the community, whether for social, political or other reasons. Matters solely of personal interest to government employees, however, are not protected by the First Amendment. Although speech related to internal personnel disputes ordinarily does not involve public concern, speech which discloses any evidence of corruption, impropriety, or other malfeasance on the part of city officials ... clearly concerns matters of public import.

*Dill v. City of Edmond*, 155 F. 3d 1193, 1202 (10th Cir. 1998).  "The mere fact that a statement was made in private does not, standing alone, remove it from the purview of public concern. Nevertheless, confidentiality is a factor in determining whether speech involved a matter of public concern." *Burley*, 66 F.App'x at 765-66 (citing *Koch v. City of Hutchinson*, 847 F.2d 1436, 1447 (10th Cir. 1988).  Moreover, the analysis of public concern involves examining the statements at issue to focus on "the extent to which the content of the employee speech was calculated to disclose wrongdoing or inefficiency or other malfeasance on the part of government officials in the conduct of their official duties." *Koch*, 847 F.2d 1436, 1445; *see also Wulf v. City of Wichita*, 883 F.2d 842, 857 (10th Cir. 1989).  Whether the speech involved a matter of public concern is a question of law. *Thomas v. City of Blanchard*, 548 F. 3d 1317, 1322 (10th Cir. 2008) (citing *Connick*, 461 U.S. at 148 n. 7).

If the Court concludes that the employee's speech was not made in his official capacity and it involved a topic of public concern, then the Court balances the employee's right of expression against the governmental entity's interest in restricting speech.  *Pickering*, 391 U.S. at 568.  The

governmental entity must articulate a basis for determining that restricting its employees' speech served the interest of promoting the efficiency of the services it performs through its employees. *Id.* The balancing of interests involves a factual analysis based on the record presented. *Brammer-Hoelter*, 492 F. 3d at 1202-03.

If the Court determines that the public employee's speech qualifies under the foregoing analysis, the employee must also establish a causal connection between his protected speech and an adverse employment action.  To do so, the employee must show that his protected expression was a substantial or motivating factor in the adverse employment action.  *Maestas*, 416 F. 3d at 1188; *Baca v. Sklar*, 398 F. 3d 1210, 1220 (10th Cir. 2005).  Although the courts have not defined the phrase "substantial" or "motivating" factor for this purpose, the Tenth Circuit has explained the plaintiff's burden of showing a substantial motivating factor:

> What constitutes a substantial motivating factor evades precise definition.  An employee "need not prove his speech was the sole reason for defendants' action." *Copp v. Unified Sch. Dist. No. 501*, 882 F.2d 1547, 1554 (10th Cir. 1989).  Nor is the employee required to show "but-for" causation; that is, to demonstrate but-for the employee's speech the subsequent employment action would not have occurred. *See Spiegla v. Hull*, 371 F. 3d 928, 941-43 (7th Cir. 2004).  Rather, the employee must show the protected speech *played a substantial part* in the employer's decision to adversely alter the employee's conditions of employment. (citations omitted).

*Maestas*, 416 F. 3d at 1188.  "To withstand summary judgment...therefore, an employee must produce evidence linking the employer's action to the employee's speech." *Id.*  "Speculation or hunches amidst rumor and innuendo will not suffice." *Jantzen*, 188 F. 3d at 1251.

The Tenth Circuit has explained the evidence that is required to create a factual dispute regarding a substantial or motivating factor.  "Adverse action in close proximity to protected speech may warrant an inference of retaliatory motive." *Maestas*. 416 F. 3d at 1189 (citing *Baca v. Sklar*, 398 F. 3d 1210, 1221 (10th Cir. 2005)).  However, even temporal proximity is "insufficient, without

8

more, to establish such speech as a substantial motivating factor in an adverse employment decision." *Id.* (citations omitted).  An employer's knowledge of protected activity, "together with *close* temporal proximity" between the protected activity and the adverse employment action, "may be sufficiently probative of causation to withstand summary judgment." *Maestas*, 416 F. 3d at 1189.  In contrast, "evidence such as a long delay between the employee's speech and challenged conduct" or evidence of "intervening events" tend to "undermine any inference of retaliatory motive and weaken the causal link." *Id.*

B.  Application to Dale's motion:

Dale argues that the statements allegedly made by Phillips are not entitled to First Amendment protection because they were made pursuant to Phillips' official duties. Alternatively, Dale contends that the statements did not touch upon a matter of public concern.  Finally, he argues, if these initial steps of the *Pickering/Garcetti* test are satisfied, he is entitled to judgment because the undisputed facts establish that Phillips cannot show that there is a causal connection between his statements and his subsequent demotion or termination.

In support of his contention that Phillips' statements were made in the course of performing his official job functions,  Dale points to Phillips'  deposition testimony that reporting wrongdoing was a part of his job responsibilities.  Examining the evidence in the light most favorable to Phillips, however, the Court believes that, when this testimony is read in context, Phillips was referring to reporting wrongdoing by the employees he supervised.  Phillips dep., Phillips Ex. 2, pp. 63-64.  The record before the Court suggests that Phillips' comments about Dale were made to private citizens, sometimes during the course of the election campaign,  rather than in an official capacity.  There is no evidence that he made an official report that he believed was required of him as a road crew

foreman.   In fact,  the record does not support the contention that Phillips ever *officially* reported any wrongdoing.

The concept of what constitutes a report or statement made in the context of an employee's duties is difficult to define; however, based on the entire record before the Court, the evidence suggests that the comments made by Phillips were not expressed as a part of his official duties. Accordingly, *Garcetti* does not bar his claim in this regard.

 Having made that determination, the Court must next consider whether Phillips' statements involved matters of public concern.  The record reflects that his comments to others involved Dale's conduct as District 3 County Commissioner, a position to which he was elected.  Phillips' statements that he believed Dale improperly claimed County mileage reimbursement for personal travel  and improperly used County equipment to perform work on private property qualify as  allegations of wrongdoing "on the part of government officials in the conduct of their official duties."  *Koch*, 847 F.2d 1436, 1445.  The Court concludes that, if the alleged statements were made, they involved matters of public concern.

The Court agrees with Dale, however, that the record is unclear as to the  precise nature of the comments made and the context in which they were made.  Phillips' deposition repeatedly reflects his inability to recall specific statements, dates, and the identity of those to whom he conveyed his opinions.  Having carefully reviewed the record and construing all inferences in favor of Phillips,  the Court concludes that Phillips' evidence, although quite limited, is sufficient to constitute more than a "scintilla, " and thus survives summary judgment on this point.[5]

---

[5]*Although Phillips' briefs attempt to portray the evidence as significant, his attorney's characterizations exaggerate Phillips' own  statements in his deposition.  In his deposition, Phillips was repeatedly asked when he made statements critical of Dale and to whom those statements were made.  Phillips was unable to recall dates or the identity*

The record is similarly deficient with regard to Phillips' testimony concerning his alleged "report" of Dale's conduct toward DOC inmates.   In the brief opposing summary judgment, Phillips' counsel suggests that Phillips officially reported multiple incidents involving several inmates, and refers to  Phillips' "good faith reports"; the brief states that "Dale was implicated in criminal wrongdoing by Plaintiff's April 2006 report."    Phillips' brief in opposition to summary judgment, pp. ii, 21, 22, 25.  Phillips' own testimony does not support these characterizations. Instead, the record reflects that his concern involved only one inmate, Tim Pooler, rather than the multiple inmates suggested in Phillips' brief.[6]

With respect to the balancing of interests phase of the *Pickering* analysis, the Court does not find Dale's argument persuasive.  Dale adopts the Board's argument that the interest of the County in maintaining a well-disciplined and efficient work environment outweighed Phillips' interest in making critical comments about Dale.  Dale argues that, when he learned that Phillips had allowed

---

of anyone to whom he reported the alleged wrongdoing; however, he was fairly certain that he talked to people about these things during the campaign.  Phillips Dep., Phillips Ex. 2.  He clearly testified that his criticism of Dale was not part of his campaign platform; he described his platform as "My campaign was run on I'll do the best I can.  That was my campaign, that's what I told everybody."  Id. at p. 113, lines 23-25.   Although  he denied making Dale the focus of his campaign, he also testified that, during the campaign, he  talked to others about  his belief that Dale improperly claimed County reimbursement for travel on one occasion and improperly  performed work with County vehicles on private property.  Phillips Dep., Phillips Ex. 2, p. 114, lines 7-24. The record is not completely clear with regard to whether Dale was aware of Phillips' comments. However,  Dale testified that he had heard "comments in town" that Phillips had said Dale improperly charged gasoline to the County.  Dale dep., Phillips Ex. 3, p. 47, lines 2-8.

[6]Contrary to counsel's suggestion, the record does not contain an April 26 report from Phillips to the DOC; in fact, Phillips testified that he never personally contacted  the DOC.  Id., p. 151, lines 20-24.  Phillips also testified that he did not report these incidents to other County Commissioners or to anyone else.  Instead, either Pooler or an attorney representing him contacted the DOC to complain about Dale.  Phillips was then contacted by a DOC representative (whose identity he could not recall on a date he could not remember);  Phillips told him what he had observed and arranged for the investigator to talk to other District 3 employees who had observed the incidents involving inmate Pooler.  Phillips dep., Phillips Ex. 2, p. 151, line 25 through p. 152, lines 1-18.  Phillips testified that the DOC investigated and he believes that, as a result of the investigation, the DOC stopped allowing its inmates to work on County projects.  Id., p. 153-54.  The record contains no testimony supporting Phillips' counsel's suggestion that Phillips accused Dale of criminal  conduct toward inmate Pooler or anyone else or that Phillips submitted a report to the DOC.

the use of a County vehicle on private property, he felt he had to demote him; similarly, when he believed that Phillips had directed unauthorized repairs to a County vehicle, Dale believed he had to terminate him.   The Court finds that, if Phillips can prove that he made the statements at issue regarding subjects of public concern, his interest in doing so outweighed the goal of ensuring efficient operation of the County office.   The evidence does not support a conclusion that, as a matter of law, Phillips' comments caused disruption in the operation of District 3 or its functions.

To avoid summary judgment, however, Phillips must also present evidence that his termination was  substantially motivated by retaliation for the foregoing comments of Phillips. While the passage of time between the comments or actions of Phillips and the September demotion and November termination somewhat weakens the causal connection which Phillips must prove, the evidence suggests that Phillips made  comments throughout a period of several months, including the time period up to the July 2006 election.   The causal connection is also weakened by Phillips' inability to recall dates or specifically identify any persons to whom he conveyed his beliefs that Dale had misused county funds or property.  However, issues of credibility cannot be decided in a motion for summary judgment.   *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 135 (2000).  Accordingly, the Court concludes that fact issues and the need to assess witness credibility are matters for the jury, and, thus, summary judgment cannot properly be granted.

Similarly,  Dale's reasons for demoting Phillips in September 2006 and terminating him in November 2006 are the subject of disputed facts.  Dale testified as to his reasons for these actions, and he denied that they were caused by Phillips' campaign or any criticism of Dale by Phillips. Phillips testified that Dale's attitude toward him changed as a result of these occurrences. The Court concludes that summary judgment cannot properly be granted on this issue.

With regard to Dale's qualified immunity argument, material fact issues also preclude

summary judgment.  His argument focuses on the contention that Phillips cannot, as a matter of law, show that a constitutional violation occurred.  Because the Court has concluded that material fact disputes preclude that finding, Dale's alternative argument fails.

Having concluded that the evidence is sufficient to avoid summary judgment on Phillips' claims against Dale, the motion for summary judgment [Doc. No. 37] is DENIED as to Phillips' § 1983 claim.

C.  Phillips' pendent state claims:

In addition to his First Amendment claim pursuant to § 1983, Phillips asserts pendent state law claims.  Phillips asserts  a public policy tort claim for wrongful termination pursuant to *Burk v. K-Mart Corp.*, 770 P. 2d 24 (Okla. 1989), alleging that he was discharged in violation of Oklahoma's public policy protecting First Amendment rights.  He also asserts a claim based on a violation of the Oklahoma Constitution, Art. 2 § 22.  That provision, like the First Amendment, prohibits infringements upon the freedom of speech or expression.  Dale argues that Phillips cannot pursue these claims in addition to his § 1983 claim because the three causes of action include identical remedies for the same alleged harm.[7]  Dale also argues that, to the extent Phillips seeks to assert a common law tort claim against Dale and the Board, that claim is barred by the Oklahoma Governmental Tort Claims Act ("GTCA").

With respect to Phillips' *Burk* claim, Dale argues that, even if he could pursue that claim in addition to his § 1983 claim, he failed to file a complaint pursuant to the GTCA.  The GTCA is the exclusive remedy by which an injured plaintiff may recover against a governmental entity, or its employees, for alleged tort claims.   *See Fuller v. Odom*, 741 P.2d 449, 451 (Okla. 1987).   The

---

[7]*Dale also argues that Phillips cannot prevail on these claims because the undisputed evidence does not support these claims.  Because the evidence is the same as that applicable to his § 1983 claim, the Court's determination that factual disputes exist as to the § 1983 claim also applies to this argument.*

GTCA  "narrowly structures the method for bringing a tort claim against a political subdivision." *Gurley v. Memorial Hosp. of Guymon*, 770 P. 2d 573, 576 (Okla. 1989).  Compliance with the GTCA notice-of-claim requirements has been viewed as "either a condition precedent to suit against a political subdivision, or a jurisdiction prerequisite to judicial intervention."  *Id.*

Phillips does not respond to this argument.  His briefs addressing Dale's motion and that of the Board do not argue that he pursued a GTCA claim regarding the claims he now asserts; he offers no evidence or legal argument as to this issue.  Therefore, he apparently concedes that he did not pursue a GTCA claim, and his state tort claims against Dale and the Board are barred by the GTCA.

Accordingly, the Court need not address the legal issue regarding the availability of a *Burk* public policy tort in this case.  The Court notes, however, that even if that claim is available in addition to the § 1983 claim, Phillips fails to explain how the remedies for these asserted claims are different.  The Oklahoma Supreme Court has held that a county employee may assert a *Burk* claim. *Vasek v. Board of County Comm'rs*, 186 P. 3d 928 (Okla. 2008).  However, *Vasek* and other recent cases have continued to limit the *Burk* tort claim to circumstances in which a plaintiff does not have an effective federal or state remedy to redress the harm alleged in the claim. *See, e.g., Kruchowski v. Weyerhauser Co.*, 202 P. 3d 144, 151-52 (Okla. 2008).  In this case, Phillips expressly seeks a federal and state tort remedy for the same alleged harm, and he fails to explain how his federal remedy is inadequate to redress that harm.  Furthermore, the Oklahoma Supreme Court has consistently held that *Burk* and its progeny do not permit a double recovery. *See, e.g., Kruchowski*, 202 P. 3d at 146.  Phillips fails to present argument or authority which could warrant a separate and distinct recovery for all claims he asserts even if a *Burk* claim could properly be pursued.[8]

_____

[8]*In contrast to the recent Oklahoma Supreme Court cases discussing the propriety of a Burk claim, this case does not present a claim based on status or classification such as gender, age, handicap, or race. See Kruchowski, 202 P. 3d 144 (discussing cases applying Burk).*

With respect to his allegations regarding the Oklahoma constitutional guarantee of freedom of speech, it is not clear whether he seeks to assert this as the basis for the public policy underlying a *Burk* claim or seeks to assert a separate claim alleging a violation of the state constitution.  His briefs can be construed as asserting both arguments.  However, to the extent that he seeks to assert a separate claim for a violation of the Oklahoma constitution, he wholly fails  to explain how the pursuit of that claim differs from his § 1983 First Amendment claim.  Although he discusses cases in which the Oklahoma constitution has been interpreted as providing a broader basis for the assertion of claims, he fails to explain how any remedy that could be available would differ from that he may receive if he prevails on his § 1983 claim.    It appears from his brief that he asks the Court to consider that claim in the event that it finds the evidence insufficient to support his § 1983 claim.  *See* Phillips' brief in opposition to Dale summary judgment motion, pp. 28-29.  Inasmuch as the Court has determined that factual disputes preclude summary judgment on his § 1983 claim, it appears to the Court that the continued pursuit of his state constitutional claim could present a potential double recovery situation in the event Phillips prevails at trial, which has been foreclosed by *Kruchowski*.

For the foregoing reasons, Dale is entitled to summary judgment on the state law claims asserted by Phillips.  To that extent, his Motion [Doc. No. 37] is GRANTED.

D.  Application to the Board's motion:

Phillips also seeks to hold the Board liable for his alleged wrongful termination.  Although a county or municipality cannot be liable under § 1983 under a theory of *respondeat superior*, it can be potentially liable for harm caused "through the execution of its own policy or custom  by those whose edicts or acts may fairly be said to represent official policy."  *Meade v. Grubbs*, 841 F.2d 1512, 1529 (10th Cir. 1988) (citing  *Monell v. Dept. of Social Services*, 436 U.S. 658, 694 (1978)).

In some circumstances, liability may be imposed for a single decision by municipal policymakers. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1985). Thus, "where action is directed by those who establish governmental policy, the municipality is equally responsible whether that action is to be taken only once or to be taken repeatedly." *Id.* at 481; *see also Lusby v. T. G. & Y. Stores, Inc.*, 796 F.2d 1307, 1312 n. 5 (10th Cir.), *cert. denied*, 479 U.S. 884 (1986).

In this case, Phillips argues that, because Dale was a County Commissioner allegedly having the delegated authority to make employment decisions, he acted as a final policymaker; thus, he contends that the Board can be liable for Dale's violation of Phillips' rights. If Phillips can sustain his burden of proving that Dale is a policymaker under this theory of recovery, then the Board may be liable if the jury finds that Dale violated Phillips' rights. Accordingly, the Board's Motion [Doc. No. 36] on Phillips' § 1983 claim is DENIED. With respect to Phillips' state law claims, for the reasons set forth with respect to Dale's motion, the Board's Motion is GRANTED.

## IV. CONCLUSION:

For the reasons set forth herein, the motions of Dale and the Board are GRANTED IN PART and DENIED IN PART. Both motions [Doc. Nos. 36 and 37] are granted to the extent they seek judgment on Phillips' claims arising under state law. To the extent they seek judgment on his § 1983 claim, the motions are denied. The action will proceed accordingly.

IT IS SO ORDERED this __14th__ day of April, 2009.

TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE